WO                                                                                        **JWB**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Ernie Pete Ortega,                )  No. CV 07-2451-PHX-MHM (JCG)
                                  )
       Plaintiff,                 )  **ORDER**
                                  )
vs.                               )
                                  )
Dora Schriro, et al.,             )
                                  )
       Defendants.                )
                                  )

Plaintiff Ernie Pete Ortega brought this civil rights action under 42 U.S.C. § 1983 against various employees of the Arizona Department of Corrections (ADC) (Doc. # 78). The Court ordered a response to Counts I through V of the Second Amended Complaint (SAC) and dismissed Count VI for failure to state a claim (see Doc. # 77 at 4, adopting Doc. # 55 at 7). Defendant Hewitt has now moved to dismiss Counts I and II (in part) of the SAC (Doc. # 81). The motion is fully briefed (Doc. ## 82, 89-90). The Court will grant Hewitt's motion.

**I.    Background**

Plaintiff's claims stem from his incarceration at the Arizona State Prison Complex-Eyman Rynning Unit in Florence, Arizona (Doc. # 78 at 1). In Count I of his SAC, Plaintiff alleged that Hewitt retaliated against him when he purposely denied a grievance and then refused to provide risk management forms to Plaintiff (Doc. # 78 at 6-7). And in Count II, Plaintiff claimed that Hewitt, Kraicinski, Sambora, Owens, Sikori, Childs, Provencio and Henderson retaliated against him when: (1) Hewitt arranged for Plaintiff to be transferred to

another unit; (2) Sikori refused to issue Plaintiff needed clothing, repair his sink or issue him personal and legal property; (3) Kraicinski and Owens held Plaintiff's legal documents and refused to copy them; (4) Childs refused to issue Plaintiff his Native American items; (5) Sambora refused to process Plaintiff's grievances; (6) Provencio delayed Plaintiff's grievances; and (7) Henderson refused Plaintiff's request for a special religious diet (id. at 8).

Hewitt now moves to dismiss Counts I and II (in part) on the ground that Plaintiff failed to exhaust his administrative remedies (Doc. # 81).

**II.  Exhaustion**

    **A.  Legal Standard**

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit with respect to prison conditions under § 1983 unless all available administrative remedies have been exhausted. See 42 U.S.C. § 1997e(a); Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006); Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005). He must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001).

Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 216 (2007). Defendant bears the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119. Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-20. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).

///
///
///

### B. Parties' Contentions

#### 1. Defendant

In support of his motion, Hewitt submits the affidavit of Aurora Aguilar, ADC Hearing Officer (Doc. # 81, Ex. 1, Aguilar Aff. ¶ 1). Aguilar attests the following: her responsibilities include investigating and tracking grievance appeals to the ADC Director's Office and maintaining the ADC Central Office Grievance Log, which records all non-medical, final grievance appeals (id., Aguilar Aff. ¶ 2). ADC has promulgated Department Order (DO) 802 Inmate Grievance Procedure, which establishes and governs the inmate grievance procedure (id. ¶ 4, ref. Doc. # 31, Ex. 1, Attach. A). Inmates may use the grievance procedure for issues related to property, staff, visitation, mail, food service, institutional procedures, Department Written Instructions, program access, medical care, religion, and conditions of confinement (Aguilar Aff. ¶ 4, DO 802.01 § 1.1.1). A copy of the grievance procedure is available at each unit's Inmate Resource Library, or an inmate may seek assistance in using the process from their assigned prison counselor (Aguilar Aff. ¶ 8). The grievance procedure is a four-step process, which is generally as follows: (1) an inmate must submit an inmate letter to his assigned Correctional Officer (CO) III, attempting to informally resolve a complaint within 10 days after becoming aware of a problem; (2) if the inmate is not satisfied with the response, he may file a formal grievance to the Grievance Coordinator within 10 calendar days of receipt of the response to the inmate letter; (3) if the inmate is not satisfied with that response, he may file a grievance appeal to a higher official—the Deputy Warden or Warden—within 10 calendar days of the receipt of the Coordinator's response; and (4) if the inmate is not satisfied with the response to his grievance appeal, he may appeal to the ADC Director within 10 calendar days of receipt of the response from the Warden or Deputy Warden (id. ¶ 5). Expiration of the time limit for a response at any level in the process entitles the inmate to proceed to the next level of review (DO 802.07 § 1.2.4). Aguilar further attests that she reviewed the ADC Central Office Grievance Appeal Log for final grievance appeals filed by Plaintiff addressing: (1) Hewitt's failure to provide Risk Management forms to Plaintiff; (2) Hewitt arranging for

Plaintiff to be transferred to another unit; (3) staff refusing to issue Plaintiff clothing, repair his sink, or issue him personal and legal property; (4) Kraicinski and Owens refusing to copy Plaintiff's legal documents; and (5) Sambora refusing to process Plaintiff's grievances, but no final grievance appeals were filed (Aguilar Aff. ¶¶ 10-11).

### 2. Plaintiff's Responses

Plaintiff filed an initial response to Hewitt's motion (Doc. # 82). Plaintiff presents argument regarding the merits of his claims and alleges that no administrative remedies were available to him because ADC officials did not respond to his grievances (id. at 3-6). Plaintiff further alleges that he attempted to grieve his retaliation claim against Hewitt, but could not because Zaborski threatened Plaintiff and Plaintiff's subsequent transfer to another ADC unit precluded exhaustion. In support of his initial response, Plaintiff submits copies of grievances and responses (id., Exs.).

After Plaintiff filed his initial response, the Court issued an Order informing Plaintiff of his obligation to respond and the evidence necessary to successfully rebut Hewitt's contentions pursuant to Wyatt v. Terhune, 315 F.3d 1108, 1120 n. 14 (9th Cir. 2003) (Doc. # 85). Plaintiff filed a supplemental response, contending again that he did not have an available administrative remedy because he was "threatened" by prison staff and transferred to a different ADC unit. Plaintiff further claims that he could not grieve the retaliatory transfer because the grievance procedure prohibits grievances as to an inmate's classification. Plaintiff also presents additional argument related to the merits of his claims. In support of his supplemental response, Plaintiff submits his declaration and copies of grievances and responses (id., Exs.).

### 3. Defendant's Reply

Hewitt replies that the grievances Plaintiff submitted in support of his response are unrelated to the issues in Counts I and II of his SAC, and therefore do not demonstrate that he had no available administrative remedy (Doc. # 90). As a result, Hewitt maintains that Counts I and II are subject to dismissal (id.).

///

**III.    Analysis**

As articulated above, Hewitt has the burden of proving lack of exhaustion and therefore must demonstrate that there were remedies available to Plaintiff. See Wyatt, 315 F.3d at 1119; Brown, 422 F.3d at 936-37. Hewitt submits evidence that a grievance procedure was available at the prison and that Plaintiff did not file any final grievance appeals as to his allegations that: (1) Hewitt retaliated against Plaintiff by purposely denying a grievance and refusing to provide risk management forms to Plaintiff; (2) Hewitt retaliated against Plaintiff by arranging for Plaintiff's transfer to another unit; (3) Sikori retaliated against Plaintiff by refusing to issue Plaintiff needed clothing, repair his sink or issue him personal and legal property; (4) Kraicinski and Owens retaliated against Plaintiff by holding his legal documents and refusing to copy them; and (5) Sambora retaliated against Plaintiff by refusing to process Plaintiff's grievances (Doc. # 81, Ex. 1, Aguilar Aff. ¶ 10).

Plaintiff does not dispute that he failed to fully exhaust these claims. Rather, Plaintiff contends that he exhausted all the administrative remedies that were available to him. For the following reasons, the Court finds Plaintiff's arguments unavailing.

First, Plaintiff's assertion that he was threatened and intimidated by CO IV Zaborski—and therefore could not exhaust—is unsupported. The grievance response Plaintiff submits to demonstrate intimidation shows no such thing (Doc. # 82-1 at 1). Rather, it reveals that Plaintiff filed numerous inmate letters as to the same issue, which contravenes the grievance procedure. As a result, Plaintiff was warned that further abuse of the grievance procedure would result in a disciplinary violation. The grievance response does not inform Plaintiff he cannot file an appeal or other grievances; in fact, it explicitly instructed Plaintiff on what to do to proceed with his grievance. See Woodford, 548 U.S. at 92. Plaintiff made no attempt to file a formal grievance as instructed, much less fully exhaust his claim.

Second, Plaintiff's argument that his transfer to a different ADC unit rendered the grievance procedure unavailable is simply incorrect (Doc. # 82 at 6). See Cohea v. Jones, 2008 WL 114956, *5 (E.D. Cal. Jan. 11, 2008); Howse v. Walker, 2007 WL 201161, *4 (E.D. Cal. Jan. 24, 2007). Moreover, Plaintiff has not adduced any evidence or argument that

he was unable to grieve his claims after his transfer to the Eyman-SMU I Unit.

Third, Plaintiff's claim that he could not file any grievance appeals because he did not receive responses to his initial grievances is belied by the express language of the grievance procedure, which instructs an inmate to press on to the next level in the grievance procedure if he does not receive a response within the procedure's timeframes (Doc. # 31, Ex. 1, Attach. A, DO 802.07 § 1.2.4). Plaintiff does not allege or show that he made *any* attempt to file a grievance appeal after he did not receive a timely response to his initial grievances. Further, Plaintiff makes only general and conclusory allegations that he was "inhibited" or "obstructed" from filing grievances, which are insufficient to overcome Hewitt's evidence that Plaintiff has successfully filed other grievances and appeals.

Fourth, Plaintiff claims that he could not grieve his transfer because inmate are not permitted to grieve their classification. Plaintiff is correct that the ADC grievance procedure does not entertain inmate complaints regarding their classification, but inmates have no constitutional right to a particular classification and, therefore, if Plaintiff were merely challenging his classification, he would fail to state a constitutional claim. See Meachum v. Fano, 427 U.S. 215, 225 (1976). In truth, Plaintiff has expressly and clearly presented a First Amendment retaliation claim, which is squarely within the staff grievance purview. See Alvarez v. Hill, 518 F.3d 1152, 1157-1158 (9th Cir. 2008) (a court looks to the facts alleged in a complaint to determine what claims are asserted). Indeed, Plaintiff clearly stated in his SAC that Defendants "punish[ed] Plaintiff in retaliation for exercising [his] constitutional right to petition the government for a redress of grievances" (Doc. # 78 at 8). Plaintiff cannot now attempt to circumvent the exhaustion requirement by claiming that he could not grieve his claim, particularly when he does not even allege that he attempted to file a grievance as to his transfer.

Plaintiff also argues that Hewitt prevented him from exhausting because he lied in a grievance response (Doc. # 89 at 5). But the referenced response clearly addresses Plaintiff's claim for lost property and tells Plaintiff that he can appeal the denial of the grievance (Doc. # 82-1 at 3). More fundamentally, however, Plaintiff's claim is that Hewitt retaliated against

- 6 -

him. There are no grievances that address this claim and no evidence that Plaintiff was prevented from exhausting. Plaintiff did not appeal that grievance and offers absolutely no explanation for *why* he could not.

Most importantly, none of the grievances Plaintiff submitted to the Court relate to his retaliation claims in Counts I and II. There is absolutely no evidence that Plaintiff was prevented in any way from utilizing the ADC's grievance procedure.

Much of Plaintiff's response focuses on the merits of his claims, which is simply not relevant to the issue of whether Plaintiff properly exhausted his claims. Griffin v. Arpaio makes clear that proper exhaustion "means that the grievant must use all steps the prison holds out." 557 F.3d 1117, 1119 (9th Cir. 2009). Plaintiff acknowledges that he did not fully exhaust his claims and he does not demonstrate that he was unable to do so. Hewitt has therefore met his burden to establish nonexhaustion, and the Motion to Dismiss will be granted.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendant's Motion to Dismiss (Doc. # 81).

(2) Defendant's Motion to Dismiss (Doc. # 81) is **granted.**

(3) Count I is dismissed without prejudice for failure to exhaust.

(4) The claims within Count II alleging that (1) Hewitt arranged for Plaintiff to be transferred to another unit; (2) Sikori refused to issue Plaintiff needed clothing, repair his sink or issue him personal and legal property; (3) Kraicinski and Owens held Plaintiff's legal documents and refused to copy them; and (4) Sambora refused to process Plaintiff's grievances are dismissed without prejudice for failure to exhaust.

/ / /

(5) The following claims remain: Count II with respect to Plaintiff's claims that (1) Childs refused to issue Plaintiff his Native American items, (2) Provencio delayed Plaintiff's grievances, and (3) Henderson refused Plaintiff's request for a special religious diet; and Counts III, IV, and V.

DATED this 16th day of December, 2009.

_____
Mary H. Murguia
United States District Judge