WO                                                                                                                    JWB

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Ernie Pete Ortega,                        )   No. CV 07-2451-PHX-MHM (JCG)
                                          )
        Plaintiff,                 )   **ORDER**
                                          )
vs.                                       )
                                          )
Dora Schriro, et al.,                     )
                                          )
        Defendants.                )
                                          )

      Plaintiff Ernie Pete Ortega brought this civil rights action under 42 U.S.C. § 1983 against various employees of the Arizona Department of Corrections (ADC) (Doc. # 78). The Court ordered a response to Counts I through V of the Second Amended Complaint (SAC) and dismissed Count VI for failure to state a claim (see Doc. # 77 at 4, adopting Doc. # 55 at 7).[1]  The Court then dismissed Count I and II (in part) (Doc. # 107 at 7). Defendants Childs, Provencio, Antonelli, and Carrillo have now moved to dismiss Count II (in part) and Count V of the SAC (Doc. # 97). The motion is fully briefed (Doc. ## 105, 116). The Court will grant the motion.

**I.  Background**

      Plaintiff's claims stem from his incarceration at the Arizona State Prison Complex-Eyman Rynning Unit in Florence, Arizona (Doc. # 78 at 1). The surviving claims in Count

---

[1] The Court also dismissed that portion of Count IV alleging that Provencio, Weerts, and Kimble denied Plaintiff's grievances in violation of the Fourteenth Amendment (Doc. # 77 at 4, adopting Doc. # 55 at 5).

II are that (1) Childs refused to issue Plaintiff his Native American items, (2) Provencio delayed Plaintiff's grievances, and (3) Henderson refused Plaintiff's request for a special religious diet (id. at 8). And in Count V, Plaintiff claimed that Antonelli and Carrillo were deliberately indifferent to Plaintiff's safety when they moved him to the East Yard, where he was assaulted due to his race (id. at 12).[2]

Defendants Childs, Provencio, Antonelli, and Carrillo now move to dismiss Counts II (in part) and V on the ground that Plaintiff failed to exhaust his administrative remedies (Doc. # 97).

**II.     Exhaustion**

    **A.     Legal Standard**

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit with respect to prison conditions under § 1983 unless all available administrative remedies have been exhausted. See 42 U.S.C. § 1997e(a); Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006); Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005). He must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001).

Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 216 (2007). Defendant bears the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119. Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-20. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).

///

---

[2] Counts III and IV also remain (Doc. # 77 at 4, adopting Doc. # 55 at 7).

**B.     Parties' Contentions**

   **1.     Defendants**

In support of their motion, Defendants submit the declaration of Aurora Aguilar, ADC Hearing Officer (Doc. # 97, Ex. 1, Aguilar Decl. ¶ 1). Aguilar attests the following: her responsibilities include investigating and tracking grievance appeals to the ADC Director's Office and maintaining the ADC Central Office Grievance Log, which records all non-medical, final grievance appeals (id.). ADC has promulgated Department Order (DO) 802 Inmate Grievance Procedure, which establishes and governs the inmate grievance procedure (id. ¶ 3, Attach. A). Inmates may use the grievance procedure for issues related to property, staff, visitation, mail, food service, institutional procedures, Department Written Instructions, program access, medical care, religion, and conditions of confinement (Aguilar Aff. ¶ 4, DO 802.01 § 1.1.1). A copy of the grievance procedure is available at each unit's Inmate Resource Library (Aguilar Decl. ¶ 7). The grievance procedure is a four-step process, which is generally as follows: (1) an inmate must submit an inmate letter to his assigned Correctional Officer (CO) III, attempting to informally resolve a complaint within 10 days after becoming aware of a problem; (2) if the inmate is not satisfied with the response, he may file a formal grievance to the Grievance Coordinator within 10 calendar days of receipt of the response to the inmate letter; (3) if the inmate is not satisfied with that response, he may file a grievance appeal to a higher official—the Deputy Warden or Warden—within 10 calendar days of the receipt of the Coordinator's response; and (4) if the inmate is not satisfied with the response to his grievance appeal, he may appeal to the ADC Director within 10 calendar days of receipt of the response from the Warden or Deputy Warden (id. ¶ 5). Expiration of the time limit for a response at any level in the process entitles the inmate to proceed to the next level of review (DO 802.07 § 1.2.4). Aguilar further attests that she reviewed the ADC Central Office Grievance Appeal Log for any final grievance appeals by Plaintiff addressing: (1) the denial of Native American Religious Church items; (2) failure to provide grievance forms at the Eyman-Rynning Unit; and (3) deliberate indifference to Plaintiff's safety by Defendants Antonelli and Carrillo after being moved to the East Yard,

1 but no final grievance appeals were filed (Aguilar Decl. ¶ 9).

### 2. Plaintiff's Response

The Court issued an Order informing Plaintiff of his obligation to respond and the evidence necessary to successfully rebut Defendants' contentions pursuant to Wyatt v. Terhune, 315 F.3d 1108, 1120 n. 14 (9th Cir. 2003) (Doc. # 99). In response, Plaintiff first alleges that he attempted to file a grievance as to his claims against Provencio and Child but various ADC employees took advantage of the grievance system, which precluded Plaintiff from exhausting his claims (Doc. # 105 at 1). As for Plaintiff's claims against Antonelli and Carrillo, Plaintiff argues that his claims are not grievable as conditions of confinement or staff complaints, but are actually disciplinary complaints, which are not grievable (id. at 3).

In support of his response, Plaintiff submits 285 pages of various documents and grievances (Doc. # 106, Exs.).

### 3. Defendants' Reply

Defendants maintain that Plaintiff failed to specifically reference any grievances in his voluminous response that would support his contention that he was prevented from exhausting (Doc. # 116). Further, Defendants reiterate that Plaintiff failed to fully exhaust his claims against Childs, Provencio, Antonelli, and Carrillo and they should be dismissed.

## III. Analysis

As articulated above, Defendants have the burden of proving lack of exhaustion and therefore must demonstrate that there were remedies available to Plaintiff. See Wyatt, 315 F.3d at 1119; Brown, 422 F.3d at 936-37. Defendants submit evidence that a grievance procedure was available at the prison and that Plaintiff did not file any final grievance appeals as to his allegations that: (1) Childs retaliated against him by denying him Native American Religious Church items; (2) Provencio retaliated against him by failing to provide grievance forms at the Eyman-Rynning Unit; and (3) Antonelli and Carrillo were deliberately indifferent to Plaintiff's safety when they moved him to the East Yard where he was immediately assaulted by gang members (Doc. # 97, Ex. 1, Aguilar Decl. ¶ 9).

///

### A. Count II against Childs and Provencio

In his response, Plaintiff does not dispute that he failed to fully exhaust these claims. Rather, Plaintiff contends that he exhausted all the administrative remedies that were available to him. The Court finds Plaintiff's arguments unavailing for the following reasons.

First, with respect to Plaintiff's claims that Childs refused to issue Plaintiff his Native American items and Provencio intentionally delayed Plaintiff's grievances or denied him forms, Plaintiff merely states that "in previously submitted documents as exhibits the Plaintiff shows that Provencio and Sambora took unfair advantage of the grievance system" (Doc. # 105 at 1). This conclusory and self-serving statement is patently insufficient to rebut Defendants' evidence that Plaintiff failed to exhaust his retaliation claims against Childs and Provencio. Plaintiff appears to reference generally documents submitted to the Court at Dockets ## 36 and 50, which total 377 pages (Doc. # 105 at 2). Additionally, Plaintiff submitted 285 additional pages of largely irrelevant exhibits with his response to Defendants' motion (Doc. # 106). In his response, Plaintiff failed to specifically reference a *single* document in all these exhibits, and the Court declines to search through 662 pages of random and unindexed documents in order to find evidence to support Plaintiff's conclusory claims. See Orr v. Bank of America, 285 F.3d 764, 775 (9th Cir. 2002) (quoting Huey v. UPS, Inc., 165 F.3d 1084, 1085 (7th Cir. 1999) ("Judges need not paw over the files without assistance from the parties.")).

But even a cursory review of Plaintiff's exhibits belies his contention that he was prevented from exhausting his administrative remedies as to his claims against Childs and Provencio. Indeed, myriad grievance responses—as to unrelated issues—explicitly inform Plaintiff how to remedy deficient grievances. And Defendants have identified an inmate letter response instructing Plaintiff to file a formal grievance as to his claim against Provencio (Doc. # 36-4 at 5). But Plaintiff did not ever file a grievance as to this claim and has not shown that he could not.

Moreover, Plaintiff's argument that he was unable to exhaust is undercut by his demonstrated ability to file literally hundreds of grievances and fully exhaust some of his

claims. In fact, Defendants concede exhaustion as to Plaintiff's retaliation claim against Henderson in Count II, Count III, and Count IV. In short, inmates are required to exhaust their claims in compliance with the prison's grievance procedure. Woodford, 548 U.S. at 92. Plaintiff does not explain *how* he was prevented from exhausting his claims against Childs and Provencio. Defendants' motion to dismiss will therefore be granted.

### B. Count V against Antonelli and Carrillo

Plaintiff contends that with respect to his deliberate indifference claim in Count V, he could not exhaust because the ADC's grievance procedure does not permit grievances as to disciplinary issues (Doc. # 105 at 3). While Plaintiff is correct that the ADC grievance procedure does not allow inmate complaints regarding inmate disciplinary issues, the grievance procedure clearly accepts grievances as to conditions-of-confinement claims or complaints regarding staff (Doc. # 31, Ex. 1, Attach. A, DO 802.01 § 1.1.1.1). Plaintiff's claim in Count V is that Antonelli and Carrillo were deliberately indifferent to a serious risk to his safety when they placed him on the East Yard with gang members who immediately assaulted him (Doc. # 78 at 12). The Court rejects Plaintiff's tepid argument that his failure-to-protect claim is really a non-grievable inmate disciplinary claim. Further, Plaintiff offers no evidence that he *ever* attempted to file a grievance as to this claim and was told it was non-grievable.[3] Consequently, the Court finds that Plaintiff failed to exhaust his claim against Antonelli and Carrillo in Count V and Defendants' motion to dismiss will be granted.

## IV. Dismissal of Parties

In the Court's December 23, 2009 Order, the Court dismissed Count I and Count II (in part) for failure to exhaust (Doc. # 107). In this Order, Counts II (in part) and Count V will be dismissed for failure to exhaust. As a result, Defendants Hewitt, Sikori, Kraicinski, Owens, Sambora, Childs, Provencio, Antonelli, and Carrillo must be dismissed because no claims remain against them.

---

[3] Even if the Court were to accept Plaintiff's argument that his claim in Count V is really an ADC inmate disciplinary claim—which it does not—Plaintiff offers no evidence that he fully appealed ADC disciplinary case No. 08-A17-008.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion to Dismiss (Doc. # 97).

(2) Defendants' Motion to Dismiss (Doc. # 97) is **granted**.

(3) The claims within Count II alleging that (1) Childs refused to issue Plaintiff his Native American items and (2) Provencio delayed Plaintiff's grievances are dismissed without prejudice for failure to exhaust.

(4) Count V is dismissed without prejudice for failure to exhaust.

(5) Defendants Hewitt, Sikori, Kraicinski, Owens, and Sambora, Provencio, Childs, Antonelli, and Carrillo are dismissed because no claims remain against them.

(6) The following claims remain: Count II alleging that Henderson retaliated against Plaintiff by refusing his request for a special religious diet; Count III alleging that Durrenburg was deliberately indifferent to Plaintiff's safety; and Count IV alleging that Durrenburg filed false disciplinary reports against Plaintiff.

DATED this 5th day of February, 2010.

_____
Mary H. Murguia
United States District Judge